**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LEWIS Y. LIU                                             Case No.: 1:21-cv-767

                          Plaintiff,

                                                            COMPLAINT

    -against-

**Democratic National Committee**

                          Defendant

---

      COMES NOW Plaintiff in the above styled action and respectfully shows this Honorable Court as follows:

## THE PARTIES

That the Plaintiff is a registered democratic voter in the state of New York.

This Complaint is filed against the Democratic National Committee, which has established rules for and managed the democratic party presidential primaries.

## **THE COMPLAINT**

1. Since 1972, Iowa and New Hampshire have always held the first two contests in the Democratic primaries. Starting with the 2016 election cycle, The DNC enacted that the primaries and caucuses cannot start until February 1; and only Iowa, New Hampshire, South Carolina and Nevada are (hereafter the "Four States") entitled to February contests.

2. During the 2020 Democratic Primaries, on April 8, Biden became the presumptive nominee after Sanders, the only other candidate remaining, withdrew from the race. In early June, Biden passed the threshold of 1,991 delegates to win the nomination.

3. New York's primary was changed from April 28 to June 23, 2020 due to the Covid-19, hence New Yorkers never had a chance to participate in the process even if its primary were held on April 28.

4. In granting the Four States (less than 4% of national population) the exclusive first-mover advantage of holding first contests, the Defendant …

    (1) discriminated against voters (including Plaintiff) in all other states, DC and territories;

    (2) in particular, denied Plaintiff the opportunity to participate in the 2020 democratic primaries.

5. Hence the Defendant has …

    (3) violated the No Preference Clause mandated by Article I, § 9;

    (4) demeaned Plaintiff's Equal Citizen Privileges guaranteed by Article IV, § 2 and the Fourteenth Amendment § 1;

    (5) debased Plaintiff's Freedom of Speech guaranteed by the First Amendment;

    (6) infringed Plaintiff's Equal Protection of Law under the Fourteenth Amendment § 1;

    (7) abridged Plaintiff's voting right under the Fourteenth Amendment § 2.

6. Plaintiff respectfully asks the Court to (1) grant an injunction to restrain the Defendant from continuing the existing primary system for future presidential nomination, and to (2) issue a declaratory judgment.

# **TABLE OF CONTENTS**

**Page**

Parties to the Proceedings ............................................................................................................. 1

The Compliant ............................................................................................................................... 2

Table of Contents........................................................................................................................... 3

Table of Authorities....................................................................................................................... 4

Jurisdiction..................................................................................................................................... 4

Constitutional and Statutory Provisions Involved ........................................................................ 5

Statement of Facts.......................................................................................................................... 6

Defendant Has Violated Plaintiff's Constitutional Rights........................................................... 11

Plaintiff Has the Standing to Sue ................................................................................................ 12

The Reliefs .................................................................................................................................. 13

The Possible Solutions................................................................................................................. 14

Conclusion ................................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*Baker v. Car*, 369 U.S. 186 (1962) ............................................................................................... 10, 11, 13

*Gray v. Sanders*, 372 U.S. 368 (1963) ............................................................................................ *passim*

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................................................................................................ 11, 13

*Wes berry v. Sanders*, 376 U.S. (1964) ................................................................................................ 11, 13


**Statutes**                                                                                                                 **Page**

28 U.S.C. § 2403(a) ........................................................................................................................... 4


**Constitutional Provisions**

U.S. Const. Amend. I ........................................................................................................................ 2, 11

U.S. Const. Amend. XIV ............................................................................................................... *passim*

U.S. Const. Article I, § 9 ................................................................................................................... 2, 11

U.S. Const. Article IV, § 2 ................................................................................................................. 2, 11

## JURISDICTION

The Plaintiff is a resident and registered voter in the State of New York, and the Complaint concerns a constitutional question. This Court has jurisdiction under 28 U.S.C. § 2403(a) with respect to a constitutional question.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

U.S. Const. Article I, § 9 provides in pertinent part:

- No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another.

U.S. Const. Article IV, § 2 (the Privilege & Immunity clause) provides in pertinent part:

- The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const. Amend. I. provides in pertinent part:

- Congress shall make no law … or abridging the freedom of speech … or the right of people … and to petition the Government for a redress of grievances.

U.S. Const. Amend. XIV. § 1. provides in pertinent part:

- No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;

- …nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV.  § 2. provides in pertinent part:

- Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.

- But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress… or in any way abridged.

## STATEMENT OF FACTS

Note: the key information in this section is primarily sourced from a Brookings Institute report "Choosing Presidential Candidates" and Wikipedia.

1. Before 1972, delegates to the national party conventions were selected through a wide variety of mechanisms. The impetus for national adoption of the binding primary election was the chaotic 1968 Democratic National Convention. Vice President Hubert Humphrey secured the presidential nomination despite not winning a single primary under his own name. After this, a DNC-commissioned panel led by Senator George McGovern – the McGovern–Fraser Commission – recommended that states adopt new rules to assure wider participation. A large number of states, faced with the need to conform to more detailed rules for the selection of national delegates, chose a presidential primary as an easier way to come into compliance with the new national Democratic Party rules. The result was that many more future delegates would be selected by a state presidential primary. The Republicans also adopted many more state presidential primaries. By 1992, Democrats had primaries in 40 states and Republicans in 39.

2. Iowa and New Hampshire have held the first contests since 1972. Iowa said it needs long time to process the results, and New Hampshire passed a state law that its primary has to be the first.

3. Beginning in the late 1980s, attention in both parties shifted to the timing of the early caucuses and primaries. "Front-loading"—more states moving their caucuses and primaries earlier in the calendar—and the special place granted to the Iowa caucuses and New Hampshire primary were the dominant concerns. By the 1980s, it was obvious that early events received far more candidate and media attention and caused many candidates to drop out once their popularity and fundraising ability proved inadequate to continue. Increasingly, with more states moving their events forward on the calendar and the outcome known earlier in the process, party leaders and voters in states with late events felt disenfranchised.

4. With the broadened use of the primary system, states have tried to increase their influence in the nomination process. One tactic has been to create geographic blocs to encourage candidates to spend time in a region. Vermont and Massachusetts attempted to stage a joint New England primary on the first Tuesday of March, but New Hampshire refused to participate so it could retain its traditional place as the first primary. The first regional primary was the Southern Super Tuesday of March 8, 1988, in which nine states united in the idea that a candidate would reflect regional interests.[9] It failed as all but two of the eight major candidates won at least one primary on that day.

5. Before the 2008 nomination season began, the Democrats adopted a rule that banned caucuses or primaries before February 5, 2008, exempting Iowa, New Hampshire, Nevada and South Carolina (hereafter "the Four States") to create some additional diversity in the early contests. The new rule also created an automatic penalty -- a loss of 50 percent of a state's delegates -- for violating the timing rule and permitted the DNC to increase the penalty. In 2008, the state legislatures in Michigan and Florida scheduled their states' party primaries before February 5 in violation of the rule. The DNC penalized both states with the loss of all of their delegates, but when the penalty was appealed to the party's Rules and Bylaws Committee it was reduced to a loss of 50 percent of the votes (their delegates were given one-half vote each).

6. Both parties enacted stricter timing rules for 2016: primaries and caucuses cannot start until February 1; and only Iowa, New Hampshire, South Carolina and Nevada are entitled to February contests.

7. In September 2019, New York Governor Andrew Cuomo signed a bill into law that designated April 28, 2020 as the state's presidential primary date, joining other states' contests on the same day.

8. The 2020 Democratic Party presidential primaries and caucuses took place in all 50 states, the District of Columbia, five U.S. territories and Democrats Abroad organized by the DNC between February 3 and August 11 to select the 3,979 pledged delegates to the 2020 Democratic National Convention held on August 17–20 to determine the party's nominee for president of the United

States in the 59th U.S. presidential election. Here's the schedule for the earliest significant primary and caucus contests:

1) Monday, Feb. 3 — Iowa caucuses (49 delegates)

2) Tuesday, Feb. 11 — New Hampshire primaries (33 delegates)

3) Saturday, Feb. 22 — Nevada Democratic caucuses (48 delegates)

4) Saturday, Feb. 29 — South Carolina Democratic primaries (63 delegates)

5) Super Tuesday, March 3 — Alabama primaries (59 delegates), Arkansas primaries (36 delegates), California primaries (495 primaries), Colorado primaries (80 delegates), Maine primaries (32 delegates), Massachusetts primaries (114 delegates), Minnesota primaries (91 delegates), North Carolina primaries (122 delegates), Oklahoma primaries (42 delegates), Tennessee primaries (73 delegates), Texas primaries (262 delegates), Utah primaries (35 delegates), Vermont primaries (23 delegates), Virginia Democratic primary (124 delegates)

6) Tuesday, March 10 — Idaho primaries (25 delegates), Michigan primaries (147 delegates), Mississippi primaries (41 delegates), Missouri primaries (178), North Dakota caucuses (18 delegates), Washington primaries (107 delegates)

7) Tuesday, March 17 — Arizona Democratic primary (78 delegates), Florida primaries (248 delegates), Illinois primaries (184 delegates), Ohio primaries (153 delegates)

8) The final primaries take place in June. The Democratic National Convention was slated for July 13-16 in Milwaukee.

9. On April 8, Biden became the presumptive nominee after Sanders, the only other candidate remaining, withdrew from the race. In early June, Biden passed the threshold of 1,991 delegates to win the nomination.

10. On April 27, New York cancelled its primary altogether on the grounds that there was only one candidate left with an active campaign. One the same day, the Democratic Commissioners at the New York State Board of Elections removed all candidates that had ended or suspended their

campaigns for president from the ballot pursuant to NYS Election Law 2-122(a), arguing that only one candidate remained in the race so no primary needed to be held. The commissioners cited the COVID-19 pandemic and millions of dollars in expenses.

11. On April 28, Andrew Yang sued the New York State Board of Elections over this decision, saying that it "creates a dangerous precedent". On May 5, a federal judge ruled that the primary election must proceed with the candidates and delegates who were on the ballot as of April 26 while the primary will be held on June 23, 2020. The State appealed the decision to the 2nd Circuit Court of Appeals, but lost the appeal on May 19. New York's primary was forced to change from April 28 to June 23, 2020 even though Biden became the presumptive nominee on April 8 and passed the threshold of 1,991 in early June.

12. Since 1972, the Iowa caucuses have had a 43% success rate at predicting which Democrat, and a 50% success rate at predicting which Republican will go on to win the respective party nomination for president at that party's national convention. According to a NPR report dated 01/31/2016, in the last 40 years, just one person has gone on to win the presidency after losing both IA & NH -- Bill Clinton. In fact, since 1976, six eventual nominees have won Iowa, while New Hampshire has picked five nominees over that same time.

13. Candidates spent tens of millions of dollars on local television advertisements and hundreds of paid staff in dozens of field offices in Iowa and New Hampshire. The Washington Post reported 11/21/2018 that based on the Federal Election Commission data for the past 13 years, during the period from April of the year before to March of the presidential year, Iowa harvested 34% of the total political spending, New Hampshire reaped 28%, D.C. took a distant 16%, while the other 48 states shared the meager leftover of 18%.

14. According to the 2017 Census estimate, IA & NH combined accounted for only 1.40% (0.97% and 0.41% respectively) of the national population, but raided 62% of total political spending during the

presidential nomination process. The Four States' combined population accounted for 3.84% of the national population.

15. According to the Washington Post's report on 04/14/2017, the 2016 Presidential Election cost $2.40 billion including $1.23 billion in primaries. That means $765 million (62% of $1.23 billion) was spent in Iowa and New Hampshire, averaging $170 per resident, vs. $469 million (38%) on the other 48 states and D.C., averaging $1.44 per resident.

16. According to https://www.openprimaries.org/taxpayer_costs_of_closed_primaries, during the 2012 presidential nomination process, the cost of running primaries in closed primary states was $287.8 million, average $12.5 million/state; the cost of running primaries, either closed or open, in all 50 states was $427.3 million, average $10.8 million/state. The five most expensive state primaries were: California $96.0 million, Maryland $27.9 million, Illinois $27.2 million, New York $25.0 million and Pennsylvania $20.0 million. However, many states have often found the nominee was already decided well before they held contests wasting enormous effort, time, and taxpayers' money.

17. It has been well-established that the diversity of Iowa and New Hampshire simply don't reflect the diversity of either our country or the Democratic Party, and the Four States represents less than 4% of the national population.

18. According to NPR's report on 01/23/2021, the DNC hopes to have the calendar issues resolved before the summer of 2022, when possible 2024 candidates will begin planning their campaigns.

19. In *Gray v. Sanders* (1963), the Supreme Court agreed with the District Court that, "*as a result of Baker v. Car, it had jurisdiction, that a justiciable case was stated, that appellee had standing, and that the Democratic primary in Georgia is "state" action within the meaning of the Fourteenth Amendment.*" Therefore, although the DNC is not a government agency, however by setting rules for the selection of nominee for the president of the United States, the DNC has been the "*state*" authority in this process for the highest office for the country.

## **DEFENDANT HAS VIOLATED MULTIPLE CONSTITUTIONAL PROVISIONS**

1. **Article I, § 9** mandates No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another. The DNC has granted the permanent exclusive first-mover status to the Four States which have not only enjoyed outsized influence in the primary process, but also benefitted enormously for their local economy from all kinds of campaign spending, while all other states have often found themselves wasting millions of dollars in holding contests when the nominee has already been decided.

2. **Article IV, § 2** and t**he Fourteenth Amendment § 1** mandate that Citizens of all state shall be entitled to the same Privileges and Immunities. This clause protects fundamental rights of individual citizens and restrains state efforts to discriminate against citizens of other states.

   For example, on the first day of new school year, a teacher comes into a classroom of 51 students, and announces that four students IA, NH, SC and NV will always be seated in the front row from now on and forever, and the other 46 students have to fight among themselves for the other seats.

   And this is exactly what the DNC has done regarding the presidential primary, i.e., residents in the Four States have been given permanent first-class status in the process, while voters in the other states including Plaintiff have been condemned as second-class voters whose vote has been diminished even to the point of meaningless e.g., in 2020.

3. **The First Amendment** prohibits any law that abridges the freedom of speech. Voting is the most sacred form of speech. Within a sequential primary process, treated as a "second-class" voter under the exiting DNC rules, Plaintiff's voting right has been diluted and even rendered meaningless during the 2020 primary. Plaintiff's First Amendment rights are abridged, violated and infringed upon given the Supreme Court's ruling in *Gray v. Sanders*.

4. **The Fourteenth Amendment § 2** further mandates the right to vote at any election including "electors for president" shall not be abridged in any way. The delegates for presidential nominee are

in fact electors for president within the party primary process. Plaintiff's vote has been clearly abridged and even nullified by the existing DNC rules.

5. **The Supreme Court Precedents**: in these landmark cases: *Baker v. Car* (1962), *Reynolds v. Simms* (1964) and *Wes berry v. Sanders* (1964), and particularly *Gray v. Sanders* (1963), the Court consistently ruled that (1) the plaintiffs' voting right was violated when their votes were diluted simply because of where they live, (2) the plaintiffs had the standing to sue under the Equal Protection Clause, and (3) the Court had jurisdiction to review and enforce the "*one person one vote*" constitutional principle, which requires voters to be accorded with equal respect and equal weigh as practical as possible regardless where they live. By common logic, equal respect and equal weigh must include equal opportunity to participate in the process and fair chance to influence the final outcome. Under the existing DNC rules, the principle of "one person one vote" has been abridged because Plaintiff and millions of voters have been relegated as "second-class" in the primary process.

## PLAINTIFF HAS THE STANDING TO SUE

1. **Plaintiff has suffered Injury in fact**. It has been well established that in a sequential party primary system, states holding contests earlier have outsized influence while states holding primaries in later stage have been diminished. Research by a Brown University economist, published in "The Journal of Political Economy" dated 06/10/2011 shows that early primary states have up to five times more influence on the final outcome. On the other hand, Plaintiff's vote was rendered completely meaningless in the 2020 primary process, while his home state, the state of New York, had to spend millions of dollars to hold the primary when the nominee was already a foregone conclusion.

2. **The Injury-in-Fact Is Clearly Traceable to the Defendant.** It is the DNC that enacted the primary schedule for 2016 and 2020 which granted the Four States (4% of the national population) the special

status of always holding early primaries/caucuses before all other states, DC, and territories (96% of national population). The DNC has also implemented rules to penalize any state that attempts to move its primary into February.

3. **The Injury-in-Fact Shall Be Redressed by the Court.** In *Gray v. Sanders* (1963), by a vote of 8 to 1, the Court struck down the Democratic Party county-unit primary System. Justice William O. Douglas wrote the majority opinion, "*the concept of political equality...can mean only one thing—one person, one vote*". The court found that the separation of voters in the same election into <u>different classes</u> was a violation of the 14th Amendment's guarantee of equal protection.  Hence the Court has the judicial power and duty to enforce the Equal Protection Clause and Equal Voting Right Clause under the Fourteen Amendment, and the Equal Citizen clause under the Article IV Section 2.  The Defendant has separated voters into two classes in the primary process under which Plaintiff's vote has been relegated to the "second class" and even meaningless in the most recent primary cycle. The aforementioned four cases have provided clear precedents for Plaintiff's case now before the Court.

## THE RELIEFS

Following the precedent set by *Gray v. Sanders* along with *Baker v. Car* (1962), *Reynolds v. Simms* (1964) and *Wes berry v. Sanders* (1964), Plaintiff respectfully seeks two reliefs:

1. an injunction from the Court to prevent the Defendant from continuing the existing discriminatory primary system that favors the Four States at the expense of all other states, DC and territories;
2. a declaratory judgment from the Court that every voter's right to vote in any election shall not be denied, diluted, debased, diminished, demeaned, disadvantaged, or manipulated in any way by any means on any account including but not limited to geographical residence.

## **THE POSSIBLE SOLUTIONS**

Plaintiff offers the following possible solutions for the DNC, not the Court, to consider. A new party primary system shall meet this criterion: every voter regardless of residence shall have an equal opportunity to participate in the primary process and a fair chance to influence the final outcome, and no state may be granted any preordained advantage.

One obvious solution would be to hold one national primary when all voters across the country vote on the same day. Alternatively, a 4x4 regional primary system may work as follows:

1. The 50 states, DC and territories are divided into four regions, namely Northeast, Southeast, Northwest, and Southwest.
2. The primaries will be held on four specific dates between February 1st and June 30th.
3. Each region shall have roughly the same numbers of states and territories.
4. Each region will be further divided into 4 groups by random draws.
5. Each region randomly draws one state for Day 1 on which 4 states will hold contests.
6. Each region randomly draws 2 states for Day 2 on which 8 states will hold contests.
7. Each region randomly draws 3 states for Day 3 on which 12 states will hold contests.
8. All remaining states (territories may join Hawaii together) will hold contests on Day 4.

The proposed 4x4 regional primary system will ensure (1) Voters in every state have a randomly equal opportunity to participate in a sequential order; and (2) Voters in every state have a far better chance to have their voice heard in determining the final party nominee.

## **CONCLUSION**

On December 1, 1955, Rosa Parks boarded a bus after work on her way home. She sat at the back section designated for the people of color. When the bus driver ordered her to vacate her row for other white passengers who just boarded the bus, Ms. Parks refused, then was arrested and penalized. It is worth noting that the bus system in the South in that era had two sections, the front section designated for a group of passengers, and the back section for another group of passengers.

As a country, we have come a long way to expand voting rights for all Americans regardless of property (14A), race & color (15A), gender (19A), tax-paying status (24A), and age (26A). It is long overdue to recognize and guarantee equal voting rights in any election regardless of residence.

By filing this lawsuit, Plaintiff respectfully appeals to the Court that no voter should be permanently treated as the "back-seat" voters in the democratic electoral process for the president of the United States.

Dated: January 28, 2021          Respectfully submitted,

                                  __/s/ yuxi liu_____

                                  Yu-Xi (Glen) Liu, Esq. (yl3022)

                                  Attorney for Plaintiffs, (347)721-1383

                                  602 39th Street, Brooklyn, NY 11232